IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  06-cv-00825-WYD-MEH

SUSAN LEDERMAN,

     Plaintiff,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,

     Defendant.

---

## ORDER

---

THIS MATTER comes before the Court on Plaintiff Susan Lederman's Motion for Summary Judgment [doc. #53], filed October 3, 2008, and Defendant Reliance Standard Life Insurance Company's Cross-Motion for Summary Judgment [doc. #58], filed October 28, 2008.  Both parties ask the Court to enter judgment in their favor, in conjunction with a review of Defendant's most recent denial of Plaintiff's short-term disability benefits pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq.  Defendant filed a response to Plaintiff's Motion contemporaneously to the filing of its Motion on October 28, 2008, and Plaintiff filed a reply in support of its Motion and responded to Defendant's Motion on November 24, 2008.  Defendant incorporated its arguments in response to Plaintiff's Motion into its own Motion, and Plaintiff incorporated her arguments in the reply in support of her Motion into her response to Defendant's Motion.  For the reasons stated herein, I will grant Plaintiff's Motion and deny Defendant's Motion.

**A. Background**

On September 12, 2007, Judge Edward W. Nottingham of this Court reviewed Defendant's decision to deny Plaintiff short-term disability benefits beyond June 19, 2005. *Lederman v. Analex Corp.*, No. 06-cv-00825-EWN-MEH, 2007 WL 2701575 (D. Colo. Sept. 12, 2007). I hereby incorporate the factual findings from Judge Nottingham's Order, but I note a few salient points. "Plaintiff worked as an administrative assistant at Analex Corporation in Colorado until May 30, 2005." *Id.* at *1. "Plaintiff alleges she was unable to continue working due to fibromyalgia and other medical problems." *Id.* Defendant's initial decision to deny benefits came on June 23, 2005, and Defendant upheld that decision upon Plaintiff's appeal on January 24, 2006. Plaintiff's short-term benefits would have been exhausted on June 29, 2005, at which point she would have been eligible for long-term disability benefits. *Id.* "Thus, the narrow issue before the court is whether Plaintiff was disabled between June 19, 2005 and June 29, 2005." *Id.*

Judge Nottingham found that the report of the functional capacity evaluation [hereinafter "FCE"] conducted December 6 and 7, 2005 was "central" to Defendant's decision upon appeal. *Id.* at *9. He then found that "Plaintiff was not given an opportunity to respond to the FCE report through no fault of her own" and that Defendant should have considered Plaintiff's affidavit dated January 30, 2006 and Dr. Eric Westerman's letter dated February 14, 2006. *Id.* at *8. Judge Nottingham held that "by failing to inform Plaintiff of the FCE report, which Defendant relied upon in denying [short-term benefits], and consequently barring Plaintiff from responding to the report,

Defendant improperly denied Plaintiff a full and fair review of her claim." *Id.* He thus "reverse[d] and remand[ed] the plan administrator's decision with instructions for Defendant to reopen Plaintiff's appeal for the limited purpose of considering her already-proffered rebuttal evidence." *Id.* at *9.

On January 24, 2008, Plaintiff filed a "Motion for Order to Show Cause and for the Imposition of Regulatory Penalties" [doc. #33], noting that 115 days had passed since Judge Nottingham's remand order and Defendant had neither transmitted a decision nor requested an extension from the 45-day review period mandated by ERISA.  On January 25, 2008, Judge Nottingham issued a "Show Cause Order and Order Re Penalties" [doc. #35], in which he ordered Defendant to show cause why the Court should not enter default judgment and in which he imposed penalties against Defendant.  In an order dated July 23, 2008 [doc. #45], Judge Nottingham vacated the portion of this order imposing penalties, but he did not vacate his award of $500 in attorneys' fees to Plaintiff.  He found that "Defendant failed to exercise its opportunity to . . . provide competent evidence to prove that the decision letter was in fact issued and sent to Plaintiff on January 15, 2008 and that as a result, Plaintiff had no reason to file a motion to show cause."

On August 15, 2008, Defendant submitted to the Court a Supplemental Administrative Record [doc. #49].  It contains Plaintiff's January 30, 2006 affidavit (Suppl. Admin. R. 207), Dr. Westerman's February 14, 2006 letter (Suppl. Admin. R. 210, 214), and the parties' correspondence with respect to this rebuttal evidence.  It also contains an "Independent Medical Evaluation for Affiliated Medical Review,"

conducted by Anne MacGuire, M.D., and dated December 11, 2007.  (Suppl. Admin. R. 216-19.)  Finally, it contains Defendant's January 15, 2008 letter in which it again upheld its decision to deny Plaintiff short-term disability benefits.  (Suppl. Admin. R. 220-23.)

        In her affidavit, Plaintiff states that the FCE "was extremely onerous, causing me extreme levels of pain."  (Suppl. Admin. R. 207.)  She continues, "I was incapacitated for almost two full weeks after the [FCE] was completed . . . .  By 'incapacitated,' I mean that I was unable to perform rudimentary and basis [sic] tasks that I need to do to survive, including personal grooming, driving, shopping for groceries, cooking, and other ordinary activities."  (Suppl. Admin. R. 207.)  Dr. Westerman states in his letter that Plaintiff "notes that for two weeks she had significant increase in pain, which is typical for patients with fibromyalgia who exert full effort during a formal FCE."  (Suppl. Admin. R. 210, 214.)  He concludes that "she does remain unable to work" and recommends "that she continue on disability, although if more formal documentation is required, she may need neuropsychiatric testing.  Regardless, in my mind from a clinical perspective, she remains disabled."  (Suppl. Admin. R. 210.)

        Dr. MacGuire's evaluation purports to be a "record review," and it begins by listing the records she has reviewed.  (Suppl. Admin. R. 217.)  Dr. MacGuire then outlines a review of records produced prior to the FCE, including evaluations from Dr. Westerman and Dr. Stuart Kassan.  (Suppl. Admin. R. 217.)  Dr. MacGuire then discusses the FCE as well as Dr. Westerman's letter and Plaintiff's affidavit.  (Suppl. Admin. R. 217-18.)  With regard to Dr. Westerman's letter, she states, "Dr. Westerman

stated [Plaintiff] was unable to work, but he did not give specific physical or functional

statements as to why she was unable to work." (Suppl. Admin. R. 218.)  Then, with

regard to Plaintiff's affidavit she states:

> This affidavit certainly flies in the face of an individual who is supposedly
> cognitively incapacitated.  Her word use and sentence structure is
> excellent, her vocabulary including the use of the words onerous,
> rudimentary and correspondence leaves this evaluator to feel that
> cognitively she functions at a fairly high level.

(Suppl. Admin. R. 218.)

In her "Summary," Dr. MacGuire states:

> While this claimant appears to have some pain, the records do not reflect
> that she has more than age expected degenerative arthritis in an obese,
> poorly conditioned individual.  The reviewed medical record does not
> provide evidence of functional musculoskeletal conditions that would
> restrict the claimant from completing a sedentary occupation.  The major
> complaints from the claimant are subjective.  Her two very capable
> rheumatologists have documented specific lack of synovitis, deformities,
> neurologic abnormalities and unremarkable serologies.  The record
> represents an absence of significant musculoskeletal conditions other than
> the subjective complaints of fibromyalgia.

(Suppl. Admin. R. 218.)  Dr. MacGuire concludes that the medical record she has

reviewed supports no restrictions and no limitations.  (Suppl. Admin. R. 219.)

In its decision letter to Plaintiff, Defendant states, "We have conducted a review

of your client's file and supplemental materials and have determined that our original

determination to deny benefits was appropriate." (Suppl. Admin. R. 220.)  Defendant

proceeds to provide its policy's definition of "disabled" and the U.S. Department of

Labor's definition of "sedentary work" and states, "we cannot reasonably conclude that

[Plaintiff] has submitted satisfactory proof that her medical condition renders her unable

to perform the material duties of her sedentary job as an Administrative Assistant."
(Suppl. Admin. R. 220-21.)  Defendant then admits that Plaintiff "has some aches and
pains as a result of her fibromyalgia," but it emphasizes the lack of objective evidence of
her disability, including any cognitive impairment.  (Suppl. Admin. R. 221.)  Defendant
notes, "We have not been provided with any neuropsychiatric test results to support
your client's claim of cognitive dysfunction."  (Suppl. Admin. R. 221.)

Defendant continues, "as a layperson this reviewer admittedly desired the
assistance of a medical expert to ensure he did not miss anything when reviewing your
client's medical records.  As such, we had your client's medical records and the
supplemental materials you have provided reviewed by an independent Board Certified
Rheumatologist."  (Suppl. Admin. R. 221-22.)  Defendant then goes on to quote Dr.
MacGuire's conclusions extensively.  (Suppl. Admin. R. 222.)  In its summary of its
findings, Defendant notes, "In fact, the only objective evidence in the file which came in
the form of a two day functional capacity evaluation supports the conclusion that your
client could in fact perform not only her job but potentially a more physically demanding
one on a full-time basis."  (Suppl. Admin. R. 222.)  Defendant then notes:

> As argued earlier to the court, [Defendant] does not believe that ERISA
> requires us to engage in an "interminable back-and-forth between the plan
> administrator and the claimant" . . . .  Nevertheless, given the court's prior
> order regarding Plantiff's right to review evidence generated during the
> course of [Defendant's] appeal review, we suspect the court would allow
> plaintiff the opportunity to respond to Dr. MacGuire's report as well.

(Suppl. Admin R. 222-23.)

**B. Analysis**

**1. Standard of Review**

Plaintiff notes that, in order to follow the direction of the Tenth Circuit, she has

filed her present Motion as a motion for summary judgment, although her original

motion was entitled "Motion for Judgment Based on the Administrative Record."  *See*

*Jewel v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1307 n.1 (10th Cir. 2007).  The First

Circuit has explained that "where review is based only on the administrative record

before the plan administrator and is an ultimate conclusion as to disability to be drawn

from the facts, summary judgment is simply a vehicle for deciding the issue."  *Orndorf v.*

*Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir. 2005).  "When there is no dispute

over plan interpretation, the use of summary judgment in this way is proper regardless

of whether [the] review of the ERISA decision maker's decision is de novo or

deferential."  *Id.*

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a

de novo standard unless the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the plan."

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Metro. Life*

*Ins. Co v. Glenn*, ___ U.S. ____, 128 S. Ct. 2343, 2348 (2008).  "When a plan gives the

administrator or fiduciary discretionary authority to determine eligibility for benefits or to

construe the terms of the plan, we review the decision for abuse of discretion,"

otherwise considered an arbitrary and capricious standard.  *Holcomb v. Unum Life Ins.*

*Co. of Am.*, ___ F.3d ____, 2009 WL 2436673, at *5 (10th Cir. Aug. 11, 2009)

(quotation omitted); *see also Glenn*, 128 S. Ct. at 2348; *Firestone*, 489 U.S. at 115;

*Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008); *Fought v.*

*UNUM Life Ins. Co. of Am.*, 357 F.3d 997, 1002-03 (10th Cir. 2004).  Here, both parties

agree that Defendant's disability plan gives Defendant discretionary authority to

determine an employee's eligibility for benefits, so I review Defendant's decision for

abuse of discretion, or under an arbitrary and capricious standard.  *See Lederman*,

2007 WL 2701575, at *6.

Review under the arbitrary and capricious standard is limited to determining

whether the administrator's interpretation of the plan was reasonable and made in good

faith.  *Weber*, 541 at 1010; *see also Rademacher v. Colo. Ass'n of Soil Conservation*

*Dist. Med. Benefit Plan*, 11 F.3d 1567, 1569 (10th Cir. 1993) (under the arbitrary and

capricious standard, the court looks to whether the decision is "lacking in substantial

evidence or contrary to law").  "Substantial evidence is 'such evidence that a reasonable

mind might accept as adequate to support the conclusion reached by the

decisionmaker.'"  *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir.

2002) (quotation omitted).  "'The Administrator's decision need not be the only logical

one nor even the best one.  It need only be sufficiently supported by facts within his

knowledge to counter a claim that it was arbitrary or capricious.  The decision will be

upheld unless it is not grounded on any reasonable basis.'"  *Finley v. Hewlett-Packard*

*Co. v. Employee Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1176 (10th Cir. 2004)

(quotation omitted).

"When reviewing a plan administrator's decision to deny benefits, we consider only the rationale asserted by the plan administrator in the administrative record and determine whether the decision, based on the asserted rationale, was arbitrary and capricious." *Weber*, 541 F.3d at 1011.   "In determining whether the evidence in support of the administrator's decision is substantial, we must take into account whatever in the record fairly detracts from its weight." *Caldwell*, 287 F.3d at 1282 (quotations and alterations omitted).   "Indicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary." *Id.*; *see also Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 380 & n.4 (10th Cir. 1992).

Both parties "agree that Defendant has an inherent conflict of interest as both the plan insurer and benefits decisionmaker." *Lederman*, 2007 WL 2701575, at *6.  Since Judge Nottingham issued his previous order, the Supreme Court has rejected the burden-shifting analysis he employed in accounting for this conflict of interest. *Holcomb*, 2009 WL 2436673, at *5 (citing *Glenn*, 128 S. Ct. at 2351).  The Tenth Circuit has explained the approach endorsed by the Supreme Court in *Glenn* to replace burden shifting:

> *Glenn* embraces instead a "combination-of-factors method of review" that allows judges to "tak[e] account of several different, often case-specific, factors, reaching a result by weighing all together."  A conflict "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision . . . [and] should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy . . . ."

*Holcomb*, 2009 WL 2436673, at *5 (quoting *Glenn*, 128 S. Ct. at 2351) (alterations in original).

Nonetheless, the Tenth Circuit has also held that its "dial-back" analysis with respect to conflict of interest has survived the holding in *Glenn*:

> To incorporate [the conflict of interest] factor, we have crafted a sliding scale approach where the reviewing court will always apply an arbitrary and capricious standard, but will decrease the level of deference given in proportion to the seriousness of the conflict.  This approach mirrors the *Glenn* Court's method of accounting for the conflict-of-interest factor.

*Weber*, 541 F.3d at 1010-11 (quotations and alterations in original omitted); *see also Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 826 (10th Cir. 1996) ("the fiduciary decision will be entitled to some deference, but his deference with [sic] be lessened to the extent necessary to neutralize any untoward influence resulting from the conflict") (quotation omitted).  Thus, while *Glenn* eliminated the burden-shifting approach, the conflict of interest is still taken into account as one factor in the analysis, and this factor is taken into account by "dialing back" the deference owed to the administrator in proportion to the seriousness of the conflict.

## 2. Scope of Dr. MacGuire's Report

Prior to proceeding with the abuse of discretion analysis, I must address Plaintiff's argument that Defendant exceeded the scope of Judge Nottingham's order by having Dr. MacGuire purport to review Plaintiff's entire file.  Judge Nottingham remanded the case for the limited purpose of Defendant's review of Plaintiff's rebuttal evidence to the FCE report.  Accordingly, Plaintiff seeks to strike Dr. MacGuire's report from the record.  Relying on *Metzger v. Unum Life Ins. Co. of Am.*, 476 F.3d 1161 (10th

Cir. 2007), Defendant contends that it was in fact required by ERISA regulations to submit Plaintiff's file for an independent medical evaluation.

In *Metzger*, the Tenth Circuit upheld the district court's finding that a plan administrator is not required to provide a claimant with an opportunity to rebut a medical opinion report generated during the administrative appeal process before deciding that appeal, where the report contains no new factual information. *Id.* at 1166-67. In arriving upon its conclusion, the district court had cited ERISA regulations requiring "that an administrator, 'in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, . . . consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment.'" *Id.* at 1166 (quoting 29 C.F.R. § 1560.503-1(h)(3)(iii) (alteration in original)). The Tenth Circuit agreed with the district court that allowing a claimant to receive and review these medical reports "would set up an unnecessary cycle" that "would undoubtedly prolong the appeal process . . . ." *Id.*

I agree with Defendant that in light of *Metzger*, it was required by regulation to consult with a healthcare professional during the appeal process. Defendant thus attempted to comply with regulations by submitting the records to be considered upon remand to Dr. MacGuire for an independent medical opinion. I further agree that despite Judge Nottingham's limited remand, it would not have made sense to submit to Dr. MacGuire the additional records in isolation, but rather it made sense for her to review Plaintiff's entire file. However, it is troubling that Defendant argues that it was required to seek Dr. MacGuire's opinion during the administrative appeal, yet it never

sought an independent opinion prior to remand.  Defendant's argument thus seems to constitute an admission that it was previously not in compliance with what was required of it.  I do not pursue this point further, however, because Judge Nottingham already found that Defendant had denied Plaintiff a "full and fair" review.  Thus, at this juncture I need not rule on the Defendant's past practices alone, but rather I evaluate them in the context of my now comprehensive analysis of Defendant's review of Plaintiff's claim.

I also note that in light of *Metzger*, Defendant was not required to provide Dr. MacGuire's report to Plaintiff to give her a chance to rebut it before deciding her appeal, as it involved no new factual information.  Judge Nottingham's remand upon his finding that Defendant had not given Plaintiff a full and fair review was based on Defendant's refusal to hear Plaintiff's rebuttal of the FCE report, which did contain new factual information and was not a mere independent review of the existing facts.  However, Plaintiff does not ask for a chance to rebut this report in her present Motion, even though Defendant suggested in its latest decision that I might allow it.  Rather, Plaintiff asks that this report be stricken because it is outside the scope of Judge Nottingham's remand.  As noted above, I find that notwithstanding the limited scope of the remand, Dr. MacGuire's evaluation was permissible, and thus I will not strike it.  However, I do find her evaluation to be problematic in other respects, as I will explain below.

### 3. Abuse of Discretion

I now proceed to decide whether Defendant abused its discretion by rendering an arbitrary and capricious decision that was not supported by substantial evidence.  In conducting this analysis, I must account for Defendant's conflict of interest in the

present case.  "Where . . . a conflict of interest may impede the plan administrator's impartiality, the administrator best promotes the purposes of ERISA by obtaining an independent evaluation."  *Fought*, 379 F.3d at 1015.  In *Holcomb*, the Tenth Circuit gave the conflict-of-interest factor limited weight where the defendant "took steps to reduce the inherent bias by hiring two independent physicians," one who reviewed the plaintiff's file and one who examined her.  2009 WL 2436673 at *6.  The court also noted the multiple ways in which the defendant "endeavored to discover the nature of [the plaintiff's] ailments," including multiple solicitations of "expert evaluations from independent medical and psychological examiners . . . ."  *Id.*  The court went on to conclude that the defendant had not abused its discretion.  *Id.*

In contrast to *Holcomb*, Defendant's review of Plaintiff's claim more closely resembles that found to constitute an abuse of discretion by the Supreme Court in *Glenn*, where "[t]he record [said] little about [the defendant's] efforts to assure accurate claims assessment."  128 S. Ct. at 2351.  Defendant's primary "active step[ ] to reduce potential bias and promote accuracy," *id.*, was its submission of Plaintiff's file to Dr. MacGuire, an independent evaluator.  However, Defendant did not provide Dr. MacGuire with the complete record.  Dr. MacGuire's report begins by listing the documents that she reviewed in completing her evaluation, and Plaintiff notes that her review omits Dr. David Conway's patient evaluation form of March 23, 2005 (Admin. R. 201) and medical records from August 31, 2005 and a date in September 2005. (Admin. R. 167-70.)  Defendant provides no response with regard to the medical records, and its response with regard to Dr. Conway's evaluation appears to constitute

an admission that Dr. MacGuire did not review it: "The document described by Plaintiff is not a treatment record.  It is a Reliance Standard form in which Dr. Conway simply stated that Plaintiff was diagnosed with fibromyalgia.  Of note, Dr. Conway did not identify any symptoms or objective findings on the form."  (Resp. 9 (citations to Admin. R. omitted).)  Defendant thus seems to admit that it did not provide Dr. MacGuire with the evaluation, and this admission is particularly troubling in light of Judge Nottingham's devotion of a full paragraph of description of this evaluation in his remand order, in which he finds that Dr. Conway "diagnosed Plaintiff with fibromyalgia . . . ." *See Lederman*, 2007 WL 2701575, at *1.

The only other independent evaluation was the FCE, the results of which were interpreted by a member of Defendant's medical team.  Throughout its review of Plaintiff's claim, Defendant has maintained the position that no objective evidence supports the granting of benefits to Plaintiff and the only objective pieces of evidence available are the results from the FCE, which support the contrary conclusion. Defendant's reliance on the FCE is problematic in light of Plaintiff's rebuttal evidence, which was the subject of Judge Nottingham's remand.  Although it does appear that, as Defendant notes, this evidence is subjective, Plaintiff's reliance on Dr. MacGuire's report in general and specifically in interpreting Plaintiff's rebuttal evidence should be called into question, as her main conclusion from Plaintiff's affidavit appears to be that Plaintiff's vocabulary and sentence structure indicate that she is not cognitively incapacitated.  One can assume that Plaintiff drafted her affidavit with outside assistance, so Dr. MacGuire's conclusion calls into question the reliability of her

-14-

evaluation, even though she might have drawn this conclusion in good faith and

Defendant does not cite this specific conclusion in its ultimate decision.

In addition to obtaining an independent medical evaluation in a flawed manner

and giving weight to an independent FCE without properly taking into account the

rebuttal evidence, Defendant did not adequately pursue other opportunities for

independent, objective evidence.  Specifically, Dr. Westerman, in his rebuttal letter to

the FCE, which Judge Nottingham found to be appropriately issued in an expeditious

manner, *see Lederman*, 2007 WL 2701575, at *8, noted that Plaintiff may need

neuropsychiatric testing.  Then, in its most recent decision, Defendant noted that it had

not been provided with any neuropsychiatric test results.

Defendant relies on the Tenth Circuit's decision in *Sandoval* for the proposition

that it was Plaintiff's burden to provide proof of her disability.  *See* 967 F.2d at 381.

However, the Tenth Circuit distinguished *Sandoval* in *Gaither v. Aetna Life Ins. Co.*, 394

F.3d 792, 804-08 (10th Cir. 2004), in which it held, "An ERISA fiduciary presented with a

claim that a little more evidence may prove valid should seek to get to the truth of the

matter." *Id.* at 808.  The Seventh Circuit's language quoted in *Fought* further supports

Defendant's duty to seek further evidence: "When it is possible to question the

fiduciaries' loyalty, they are obliged at a minimum to engage in an intensive and

scrupulous independent investigation of their options to insure that they act in the best

interests of the plan beneficiaries."  379 F.3d at 1015 (quoting *Hightshue v. AIG Life Ins.*

*Co.*, 135 F.3d 1144, 1148 (7th Cir. 1998)).  I find that Defendant was not acting as a

fiduciary where, instead of pursuing objective evidence that had been suggested to it

and that could have supported Plaintiff's claim, it merely relied upon the absence of this evidence in denying Plaintiff's claim.  Defendant needs to look no further than *Holcomb*, which involved multiple "expert evaluations from independent medical and psychological examiners," for an example of a plan administrator acting as an ERISA fiduciary.  2009 WL 2436673 at *6.

Finally, there are additional circumstances suggesting bad faith or at least a higher likelihood that the conflict of interest affected Defendant's benefits decision. Judge Nottingham found that Defendant never proved that it issued its latest decision to Plaintiff on January 15, 2008, as Defendant had claimed.  Even if Defendant had made such a demonstration, the decision still would have come well after the 45-day time period allowed by ERISA.  Defendant has at no point in these proceedings provided a response or explanation with regard to this delay.  Also, Defendant admits in its current briefing that it has not paid the $500 in attorneys' fees that Judge Nottingham awarded to Plaintiff, claiming that ERISA does not permit such an award.  Accordingly, Defendant states it is reserving its right to appeal the award.  This is not a valid reason to defy an order of the Court, and Defendant has not filed a motion to stay that order.  While this may not necessarily demonstrate bad faith or the influence of the conflict of interest, I do note this defiance as another indication of Defendant's conduct since the remand, and I will order Defendant to pay the award.

In light of the shortcomings in Defendant's attempts to account for its biases through independent evaluations, as well as the other evidence of potential bad faith or the influence of the conflict of interest, I must give the conflict-of-interest factor greater

-16-

weight and dial back my deference to Defendant.   Under similar circumstances, in *Glenn*, the Supreme Court upheld the Sixth Circuit's reversal of the defendant's discretionary decision where the defendant "had emphasized a certain medical report that favored a denial of benefits, had deemphasized certain other reports that suggested a contrary conclusion, and had failed to provide its independent vocational and medical experts with all of the relevant evidence."   128 S. Ct. at 2352.   I have already noted that Defendant did not provide Dr. MacGuire with all of the relevant evidence.   Also, like in *Glenn*, Defendant emphasized Dr. MacGuire's report and the FCE, which favored a denial of benefits, and it deemphasized reports suggesting a contrary conclusion, including those of Drs. Westerman and Kassan.

These two reports, along with Dr. Conway's aforementioned report that was not reviewed by Dr. MacGuire, all include opinions supporting a finding that Plaintiff was unable to work at her position.   Dr. Conway's report noted that "Plaintiff's physical limitations were sixty to seventy percent, rending her 'incapable of clerical or administrative (sedentary) activity.   Her psychiatric impairment was 'marked,' meaning she was 'unable to engage in stress situations or engage in interpersonal relations.'" *Lederman*, 2007 WL 2701575, at *1 (quoting Admin. R. 201).   Dr. Kassan's opinion of July 14, 2005 concludes, "[I]t seems the patient definitively has fibromyalgia syndrome with multiple tender points and fatigue with a history of asthma, hypertension, and migraine headaches.   I feel at this point the patient certainly is totally disabled on the basis of her underlying condition."   *Id.* at *3 (quoting Admin. R. 188).   Dr. Westerman, in his February 14, 2006 letter rebutting the FCE report, concludes that "she does remain

-17-

unable to work" and recommends "that she continue on disability."  (Suppl. Admin. R.

210, 214.)  While Defendant argues that the letter's conclusion does not appear to have

much of an objective basis, I note that Dr. Westerman is the doctor who had treated

Plaintiff multiple times.  *See Lederman*, 2007 WL 2701575, at *2-3.

The cases cited by Defendant in support of its denial of benefits are in large part

inapposite.  Two of the three cases have been abrogated in light of changes to the

conflict-of-interest analysis.  *See Jordan v. Northrop Grumman Corp. Welfare Benefit*

*Plan*, 370 F.3d 869 (9th Cir. 2004), *abrogated by Abatie v. Alta Health & Life Ins. Co.*,

458 F.3d 955, 969 (9th Cir. 2006); *Denmark v. Liberty Life Assur. Co. of Boston*, 481

F.3d 16 (1st Cir. 2007), *superseded on rehearing*, 566 F.3d 1 (1st Cir. 2009).  In the

third case cited by Defendant, the Eighth Circuit's deferential review did not involve a

conflict of interest.  *Parkman v. Prudential Ins. Co. of Am.*, 439 F.3d 767, 772 n.5 (8th

Cir. 2006).  Although the Eighth Circuit noted that plaintiff's claim would fail even under

a de novo review, *id.*, it offered no analysis for this finding, and its analysis instead

proceeded under deferential review.  *See id.* at 772-73.

Moreover, *Parkman* is distinguishable on its facts.  In *Parkman* one of the

plaintiff's own doctors had noted at one point that "she was using this as an opportunity

to state she cannot return back to the work force," and there was no record of any

negative after-effects of the FCE, as Plaintiff experienced in the present case.  *Id.* at

770.  More importantly, Defendant mischaracterizes the facts of the present case by

comparing Dr. Westerman's statement at one point that Plaintiff's symptoms were

"suggestive of fibromyalgia" to the doctor in *Parkman* stating that the plaintiff's condition

was "probably" consistent with fibromyalgia.  Defendant's isolation of that one statement

belies the record, as Dr. Conway "diagnosed Plaintiff with fibromyalgia," *Lederman*,

2007 WL 2701575, at *1 (citing Admin. R. at 201), Dr. Westerman stated that Plaintiff

"has a classic presentation [of fibromyalgia]," *id.* at *2 (quoting Admin. R. at 199)

(alteration in original), and Dr. Kassan stated that Plaintiff "definitively has a fibromyalgia

syndrome," *id.* at *3 (quoting Admin. R. at 188).  Thus, I find that the Eighth Circuit's

holding in *Parkman* is inapplicable to the present case.

I also note in its most recent decision, Defendant admitted that Plaintiff has

fibromyalgia when it stated, "[W]e do not dispute that she has some aches and pains as

a result of her fibromyalgia." (Suppl. Admin. R. 221.)  Thus, the parties' extended

arguments with respect to whether Plaintiff has fibromyalgia are irrelevant and improper

for me to consider.  The relevant issue is whether Plaintiff, in light of her medical

condition, was disabled between June 19, 2005 and June 29, 2005.  In light of the

foregoing analysis, I conclude that Defendant's decision that she was not disabled

constituted an abuse of discretion.

### 4. Remedy

The remaining issue before me is the proper remedy to redress Defendant's

abuse of discretion.  "Generally speaking, when a reviewing court concludes that a plan

administration has acted arbitrarily and capriciously in handling a claim for benefits, it

can either remand the case to the administrator for a renewed evaluation of the

claimant's case, or it can award a retroactive reinstatement of benefits." *DeGrado v.*

*Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir. 2006) (quotation omitted).

In *DeGrado*, the Tenth Circuit provided the following guidance in choosing the

appropriate remedy:

> Which of these two remedies is proper in a given case, however, depends
> upon the specific flaws in the plan administrator's decision.  In particular, if
> the plan administrator failed to make adequate findings or to explain
> adequately the grounds of its decision, the proper remedy is to remand the
> case to the administrator for further findings or explanation.  In contrast, a
> retroactive reinstatement of benefits is proper where, but for the plan
> administrator's arbitrary and capricious conduct, the claimant would have
> continued to receive the benefits or where there was no evidence in the
> record to support a termination or denial of benefits.

*Id.* at 1175-76 (quotations, citations, and alterations omitted).

Though it is a close question, I ultimately find that I must remand this case in light

of the Tenth Circuit's high burden for reversal.  My finding that Defendant's decision

constitutes an abuse of discretion is based primarily on its failure to make adequate

findings, and I cannot find, in light of the FCE, that there was no evidence in the record

to support a termination of benefits.  Thus, I will remand Plaintiff's claim so that

Defendant can conduct neuropsychological tests, allow Plaintiff to respond to this new

factual information, and seek any appropriate independent consultations.

In remanding the case, I provide some cautionary guidance to Defendant.  I

recognize that this second remand runs the risk of creating the dreaded "interminable

back-and-forth" between the parties, and this case has dragged on now for several

years, so Defendant must conduct any further fact finding and review in an expeditious

manner.  Furthermore, the time period relevant to the present case was four years ago,

so Defendant must recognize the limitations in the informativeness of any current

evaluation of Plaintiff.  Along these lines, in its denial of benefits Defendant has relied

upon a lack of objective evidence and a finding that the evidence supporting benefits is overly subjective, but the Tenth Circuit has held that subjective evidence of disability is permitted in ERISA cases in rejecting this very argument. *Ray v. UNUM Life Ins. Co. of Am.*, 224 Fed. App'x 772, 786-87 (10th Cir. Mar. 28, 2007).

**C. Conclusion**

Based upon the foregoing, it is hereby

ORDERED that Plaintiff Susan Lederman's Motion for Summary Judgment [doc. #53], filed October 3, 2008, is **GRANTED** and Defendant Reliance Standard Life Insurance Company's Cross-Motion for Summary Judgment [doc. #58], filed October 28, 2008, is **DENIED**.  In accordance therewith, it is

ORDERED that this matter is **REMANDED** to the plan administrator to make further findings consistent with this Order.

Dated:  September 30, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge